LUELLA S. DAVENPORT ET AL.
(Appeal from Probate, Estate of Charles H. Hawley)

Superior Court      Fairfield County      File No. 68004

MEMORANDUM FILED MAY 18, 1944.

*Redden & Weiss*, of Bridgeport, for the Appellants.

*Boardman, Stoddard & McCarthy*, of Bridgeport, for the Appellees.

McEVOY, J. This is an appeal from the action of the Probate Court for the District of Bridgeport, Connecticut.

The appellants are beneficiaries under the will of Charles H. Hawley of which the appellees are the trustees. As such trustees the appellees have the title to certain land in the City of Bridgeport, Connecticut.

On the 12th day of July, 1943, the appellees entered into an agreement in writing for the sale of these premises to Milton W. Plotkin. The consideration to be paid to the trustees was $1,000 in cash, which was paid to the trustees upon the execution of the agreement; $4,000 in cash or by certified check on the date of closing of title; $15,000 by the note of the buyer dated as of the date of closing of title payable to the trustees on demand with interest at the rate of five per cent per annum payable semi-annually in advance with other subsidiary details as arranged. The property is vacant land except that there is upon it certain equipment intended for the storage and sale of gasoline. The agreement was divided into nine paragraphs and, in paragraph 8 of that agreement, it was expressly stipu-

lated that the sale (of said premises and property) was sub-
ject to the approval of the Probate Court for the District of
Bridgeport. The agreement also contained stipulations as to
the disposal of the $1,000 deposit in case the sale should not
be completed.

Thereafter, on the 9th day of October, 1943, the appellees
made application to the Probate Court for the District of
Bridgeport for permission to sell the property described in
the agreement between the parties above referred to. Among
other allegations of that application it was represented, in para-
graph 1 of the application: "That it is for the interest of the
trust estate and all parties concerned therein that such of the
real and personal property now comprising a portion of the
assets of said trust estate should be sold." In paragraph 3 of
that application the written contract between the trustees and
the buyer was set out and referred to as Exhibit A. In para-
graph 5 of that application it was represented "that such sale
will best promote the interests of the beneficiaries under said
trust."

The hearing, in the Probate Court, on the application was
set for October 26, 1943, and on October 18, 1943, notice
thereof was duly given to all parties interested. Subsequently,
at the request of the attorney for the present appellants, the
Probate Court continued that hearing until November 9, 1943.

On November 4, 1943, at 11:15 o'clock a.m. the trustees
received an offer of $23,000 for the real estate from one James
M. Helm, then a tenant of the property. Helm's offer pro-
vided that $4,000 for the purchase price should be paid in
cash and the balance of $19,000 should be taken care of by a
purchase money mortgage to be amortized at the rate of $500
a year and paid in monthly instalments of $183.25 and this
offer was accompanied by check for $1,000 as a deposit. There-
after, on the same day, November 4, 1943, at 2:45 o'clock in
the afternoon this offer was withdrawn. On that same
day, November 4, 1943, the trustees received notification
from Percy P. Anderson that, should the sale be completed,
Anderson would look to the estate for a commission of five
per cent of the purchase price. On the same day the trustees
received a letter from the Investors Mortgage Company also
claiming a commission.

On November 8, 1943, the trustees received a letter from the husband of the appellant, Luella S. Davenport, dated November 6, 1943, in which the trustees were advised that there was a disapproval of the sale of the property at $20,000 as provided in the contract of sale. Thereafter, on November 9, 1943, at 11 o'clock a.m. the hearing on this application for permission to sell was held in the Probate Court for the District of Bridgeport. At 12 o'clock noon, on that day, the hearing was adjourned until 2 o'clock in the afternoon of that day. In the interim, Percy P. Anderson submitted to the trustees on behalf of James M. Helm, who had previously made an offer and withdrawn it, an offer to purchase the real estate in question for $24,000, of which $4,000 would be paid in cash and the balance by a purchase money mortgage of $20,000, with interest at five per cent to be amortized at the rate of $500 a year. That offer was accompanied by a check for $500 as a deposit. In the meantime and at the hearing the trustees made these new facts known to the court.

By agreement of the parties, that hearing was then continued until 2 o'clock p.m. on November 22, 1943. On November 17, 1943, the trustees received a letter from Attorney Harold C. Harris, dated November 16, 1943, who purported to act for James M. Helm. This letter stated that "all former offers coming from him (Mr. Helm) through Investors Mortgage Company or Percy P. Anderson or persons unknown to the writer are expressly withdrawn and, in lieu thereof, the writer, as the attorney for the said James M. Helm, makes the following offer to purchase the property in question." That offer was for $22,000; $4,000 to be payable in cash and the balance by purchase money mortgage of $18,000 bearing interest at the rate of five per cent per annum and payable in monthly instalments of principal and interest of $118.80 together with an adjustment of the taxes. In that letter it was also set out that the Investors Mortgage Company would claim a commission of five per cent for its services in bringing about the sale.

Thereafter the hearing was again continued from November 22, 1943, to November 29, 1943, and thereafter to December 6, 1943, and again to December 7, 1943. At the hearing in the Probate Court on Deecmber 7, 1943, the court was informed as to the terms of the offer from Mr. Helm.

On December 7, 1943, the Probate Court for the District of Bridgeport decided the matter and entered a decree. The

court found, in substance, that the allegations of the application had been proven and that there was reasonable cause for granting the application and ordered that the property in question be sold to the buyer named in the contract for the sum of $21,000; $6,000 to be paid in cash and the balance to be secured by mortgage upon the property for $15,000.

Thereafter, on December 23, 1943, Attorney Frank L. Wilder, acting for the buyer, Milton W. Plotkin, wrote to the trustees and informed them that his client would accept the order of the Bridgeport Probate Court and pay $21,000 for the property instead of $20,000 as previously offered.

From the order and decree of the Probate Court for the District of Bridgeport the appellants, Luella S. Davenport and Jane D. Dixon, have appealed to this court.

"The court of probate may, on the application of any trustee under a will duly probated in its district, upon notice given to all parties in interest and due hearing had, order the sale... of any real estate in this state....held by such trustee, whenever it shall in the opinion of such court best promote the interests of the beneficiaries under such trust...." (Gen. Stat. [1930] §4835.)

Section 670g of the 1943 Supplement to the General Statutes is an amplification of the previous section and provides, substantially, that "The court of probate may....if it shall find reasonable cause therefor, order the sale of the whole or any part of it [the real estate], or of any easement or other interest in, any real estate...."

Upon the trial of this case evidence was offered as to the value of these premises. The evidence was conflicting and some estimates ran as high as $27,000.

The evidence indicated that there are no encumbrances upon the property and that a present rent of $125 a month was being obtained.

It does not appear, from the evidence or from the stipulations of the parties, that the amount obtained is insufficient to reasonably carry the premises and to preserve the assets of the estate.

The stipulated facts show that, should the sale be made, there is a probability that the trustees would be involved in

disputes, if not in litigation, as to claimed commission or commissions.

· The appellants object to the granting of the order of sale for two reasons. The first is that the maximum amount of any offer is insufficient and not consistent with the value of the premises. The second is that it is not for the interests of the beneficiaries that a sale be made but that the property should be retained by the trustees for the benefit of the beneficiaries.

By its enactment the Legislature has emphasized the phase of the matter which has to do with the interests of the beneficiaries.

The trustees have acted wisely in applying to the Probate Court for permission to sell. Such sale, as indicated by the contest in the instant situation, often bring about discord and sometimes litigation to the disadvantage of the trustees unless suitable precautions are taken, as in the present case. It should be observed that the contract looking toward this sale was, as a condition precedent, expressly made to depend upon the approval of the Probate Court. This was a very wise move as is shown by the litigation in the instant case.

It is, at least, doubtful whether, notwithstanding the letter from the buyer the trustees could enforce the sale as ordered by the Probate Court. The question of consideration for the subsequent modification of the agreement might be the basis of dispute between or among these parties.

Upon the record it is clear that the original agreement between the parties was not approved by the Probate Court. Another, and probably more beneficial, agreement was envisaged as shown by the order of the court.

The trustees have alleged, in their application, that the proposed sale "will best promote the interests of the beneficiaries under such trust." Since they are the proponents of this claim they assume the burden of proving it. There is a serious dispute and a conflict as to whether or not this allegation has been proven.

Under all the circumstances it would seem more in accord with justice to all parties to deny this application.

That denial and judgment upon it will leave the trustees free from the complications which have arisen out of the present attempt to sell. They will then be in a position to take the matter up further and to decide whether or not another and larger offer for the sale of the property may be received and entertained.

The issues are found for the appellants and judgment may enter accordingly.

No costs will be taxed in this action.